# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| **VENTURE GLOBAL CP EXPRESS, LLC,** § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION NO._____ | |
| § | | |
| **4.79 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 8.38 ACRES OF LAND, MORE OR LESS, TEMPORARY WORKSPACE, AND 0.67 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORKSPACE, IN NEWTON COUNTY, TEXAS, TRACT NO. TX-NE-026.000, LLOYD GLENN STEPHENSON, JR. AND BEVERLY REEL STEPHENSON;** § § § § § § § § § § § § § § | | |
| § | | |
| *Defendants*. § | | |

## VERIFIED COMPLAINT FOR CONDEMNATION

Plaintiff Venture Global CP Express, LLC ("Plaintiff" or "CP Express"), by and through counsel, files this Verified Complaint for Condemnation ("Verified Complaint") pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1. CP Express seeks an order of condemnation for the permanent pipeline, temporary workspace easements, and other rights-of-way and easements, which are described below and identified, described and depicted on **Exhibit A** attached hereto and incorporated herein, and for such other legal and equitable relief as may be appropriate, specifically including injunctive relief allowing CP Express to immediately enter the property to clear the Easements and commence and complete

construction and restoration efforts and operate and maintain the pipeline described in Paragraph 1 below while the proper amount of compensation for the taking is resolved in this action.

## JURISDICTION, VENUE, AND AUTHORITY FOR TAKING

1. CP Express is the holder of a Certificate of Public Convenience and Necessity ("Certificate") issued on June 27, 2024, by the Federal Energy Regulatory Commission ("FERC"), under Docket No. CP22-22-000, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein, to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and/or abandon in place approximately 85.4 miles of forty-eight inch (48") diameter mainline pipeline, and approximately 6 miles of twenty-four inch (24") diameter lateral pipeline, connections to existing pipelines, and auxiliary and appurtenant facilities traversing on, over, through and under certain lands located in Jasper and Newton counties, Texas, and Cameron and Calcasieu parishes, Louisiana, in order to meet the demand for transportation capacity to deliver natural gas to the CP2 LNG Project in the Louisiana Gulf Coast (the "CP Express Pipeline Project"). The CP Express Pipeline Project represents an approximate $1.483 billion investment of private funds for interstate natural gas infrastructure FERC has deemed to be in the public convenience and necessity under the NGA.

2. This is a civil action for the taking of property interests under the power of eminent domain and for the determination and award of just compensation to the Landowners and Other Parties-in-Interest as identified on **Exhibit A**. The authority for the taking is 15 U.S.C. § 717f(h), which grants federal jurisdiction. Additionally, jurisdiction exists under 28 U.S.C. §1331, because this action arises under the laws of the United States, and under 28 U.S.C. § 1337, because this action arises under an Act of Congress regulating interstate commerce.

3. Pursuant to 15 U.S.C. § 717f(h), the compensation demanded or claimed by the owner or owners of each tract to be burdened by the Easements on, over, across and/or under each such tract exceeds $3,000.00, as does the amount offered by CP Express for such Easements.

4. CP Express has not been able to acquire by contract, and/or is unable to agree as to the amount of compensation to be paid for the Easements that will burden the lands owned by the Defendants (as hereinafter defined).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the properties that are the subject of this action are situated within this judicial district, and it is proper to join all of the properties identified on **Exhibit A** in this action and to join all of the Defendants.

## PARTIES

6. CP Express is a natural gas company as defined by Section 2(a) of the NGA, 15 U.S.C. § 717a(6). CP Express is a Delaware limited liability company with a principal place of business at 1401 McKinney Street, Suite 2600, Houston, Texas 77010.  It is registered to do business in and is authorized and engaged to do business in the State of Texas and within this federal district.

7. CP Express is a company organized for the purpose, among other things, of transporting natural gas in interstate commerce through pipes and conduits, and is a natural gas company within the meaning of the NGA, 15 U.S.C. §§ 717a(6) and (1), and as such, is qualified to construct, install, own, operate and maintain pipelines for the transmission of natural gas in interstate commerce.

8. Pursuant to the Certificate, FERC has determined that the CP Express Pipeline Project will serve the public convenience and necessity by, among other things, providing the

public with a safe and reliable interstate pipeline system for the transportation of domestic supply of natural gas to the CP2 LNG Project in the Louisiana Gulf Coast. The Easements sought herein are needed by CP Express to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and/or abandon in place the CP Express Pipeline Project for the transportation of natural gas in interstate commerce and to fulfill the public purposes for which the Certificate was issued.  **Exhibit B**, Certificate at ¶¶ 10-14.

9. The persons and/or entities known or whose names could be ascertained by a reasonably diligent search of the records as owning or claiming any interest in the tract or tracts on, over, across and/or under which the Easements are to be situated as identified, depicted or described on **Exhibit A** (the "Parent Tracts"), are collectively referred to herein as "Defendants."

10. There may be others who have or may claim some interest in the Parent Tracts, whose names could not be ascertained by a reasonably diligent search of the records. These persons and/or entities are made parties to this action under the designation of "Unknown Owners" pursuant to Federal Rule of Civil Procedure 71.1(c)(3).

11. The amount of the property sought for such Easements, as well as the location of all Easements sought to be condemned in this action are within the scope of the Certificate and are necessary for the operation of the CP Express Pipeline Project. A map depicting the CP Express Pipeline Project's overall approved route is attached hereto as **Exhibit C.**

12. CP Express has voluntarily acquired the majority of the Easements necessary for the CP Express Pipeline Project, and has negotiated with the Landowners in good faith in an attempt to purchase amicably the Easements on, over, across and under the Parent Tracts and has negotiated with Other Parties-in-Interest, if any, to accommodate pre-existing rights within the lands to be traversed by the Easements and/or existing facilities crossed by the Easements, all as

necessary to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and/or abandon in place the CP Express Pipeline Project, but has not been able to reach an agreement in this regard. Furthermore, CP Express has made written offers to the affected Landowners for the Easements sought to be acquired before instituting this action, but such offers have been rejected, or such affected Landowners have failed to respond, thereby preventing negotiations.

13. Therefore, it is necessary for CP Express to exercise its right of eminent domain under Section 7(h) of the NGA, 15 U.S.C. §717f(h), to acquire the needed Easements for the CP Express Pipeline Project.

## THE CP EXPRESS PIPELINE PROJECT

14. The CP Express Pipeline Project will have capacity to provide up to 4,400,000 dekatherms per day (Dth/day) of transportation service of natural gas within the mainline and lateral pipelines to meet capacity demands.

15. The CP Express Pipeline Project represents an approximate $1.483 billion investment in energy infrastructure in the United States.

16. CP Express has entered into a binding Precedent Agreement with Venture Global CP2 LNG, LLC for One Hundred Percent (100%) of the long-term firm transportation service to be provided by the CP Express Pipeline Project. In order to satisfy the in-service requirements of the precedent agreement, CP Express must expeditiously commence construction of the mainline and lateral pipelines so that the lines can be timely placed in service to meet the needs and requirements of its shipper.

17. The proposed construction schedule and contractual In-Service Dates for the CP Express Pipeline Project are driven by the public need for providing a means of transporting large volumes of natural gas to market.

18. The CP Express Pipeline Project is a complex project that involves numerous stakeholders, including gas producers and shippers, landowners, consumers, as well as numerous governmental agencies, including FERC, the U.S. Army Corps of Engineers, the U.S. Fish and Wildlife Service, the Texas Commission on Environmental Quality, the Railroad Commission of Texas, the Texas Parks and Wildlife Department, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Environmental Quality, among others.

19. Per the Certificate, the construction of the CP Express Pipeline Project must comply with applicable environmental permits, approvals and regulations. *See* **Exhibit B**, Certificate at Ordering Para D (3). During its review of CP Express's Certificate application, FERC staff prepared an Environmental Impact Statement ("EIS"), which assessed the potential environmental effects of the construction and operation of the CP Express Pipeline Project, and FERC concluded that the CP Express Pipeline Project, "if implemented as described in the applications and in compliance with the environmental conditions to this order, are environmentally acceptable actions." **Exhibit B**, Certificate, ¶ 198. FERC's Final EIS can be found online at FERC's website, and the findings and conclusions of the EIS are incorporated herein.[1]

20. The construction schedule for the CP Express Pipeline Project is constricted and involves a complex logistical effort that will require the careful coordination of hundreds of construction workers performing various stages of work sequentially in an assembly-like fashion

---

[1] The final EIS may be viewed and downloaded from the FERC's website (www.ferc.gov), on the natural gas environmental documents page (https://www.ferc.gov/industries-data/natural-gas/environment/environmental-documents). In addition, the final EIS may be accessed by using the eLibrary link on the FERC's website. Click on the eLibrary link (https://elibrary.ferc.gov/eLibrary/search), select "General Search", and enter the docket number in the "Docket Number" field (i.e., CP22-21 or CP22-22). Be sure you have selected an appropriate date range. For assistance, please contact FERC Online Support at FercOnlineSupport@ferc.gov or toll free at (866) 208-3676, or for TTY, contact (202) 502-8659.

along the construction corridor at a rate (distance per day) that is affected by topography, roads, environmental features, and other factors.

21. To meet its shipper's needs and those of its shipper's customers, while at the same time complying with applicable regulations and CP Express' obligations as set forth in the Certificate, CP Express must begin various surveys and other pre-construction activities, and then construction, immediately.

22. Timing is of the essence, and maintaining the project schedule is critical, as any delay in commencing and completing pre-construction activities and construction of the CP Express Pipeline Project will likely prevent CP Express from meeting the needs and requirements of its shipper and its shipper's customers.

**COUNT ONE: CONDEMNATION OF PROPERTY INTERESTS TO BE ACQUIRED AND PROPERTY USE**

23. The interests to be acquired by CP Express are a non-exclusive perpetual fifty feet (50') wide permanent pipeline rights-of-way and easements (the "Permanent Pipeline Easements") as same are identified, described and depicted on **Exhibit A** hereto, to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and/or abandon in place one pipeline in the fifty feet (50') wide permanent easements more fully identified, described and depicted on **Exhibit A** hereto, said pipeline being not to exceed forty-eight inches (48") in nominal diameter (the "Pipeline or "Pipelines"), as set forth on **Exhibit A**, and located within such Permanent Pipeline Easements, together with such below ground valves (unless a surface site easement is sought, in which case, CP Express seeks to have the right to place both the valve, meter, regulation, measurement, launchers and receivers and related equipment and facilities above and below ground), and below ground fittings, and below ground wires, cables, and other equipment and appurtenances, and above ground cathodic protection test leads and

control devices, Tru Tracker wires strung outside of, but parallel to, the permanent right-of-way, and pipeline markers, as may be necessary or convenient for construction, operation and maintenance of the Pipeline (collectively, along with the equipment, facilities and devices and roads described in the paragraphs below, the "Facilities"), under, upon, across, and through the Parent Tracts as identified, described and depicted on **Exhibit A.**

24. CP Express also seeks to condemn non-exclusive temporary workspaces and additional temporary workspaces identified, described and depicted on **Exhibit A** hereto (collectively, the "Temporary Workspace Easements"). Each of the foregoing Temporary Workspace Easements shall be used by CP Express solely for the initial construction of the Project in the Permanent Pipeline Easements and for the restoration and remediation of the land after initial construction and shall expire upon completion of the initial construction and restoration and remediation or upon the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Workspace Easement at issue is located, whichever occurs first. Thereafter, all of CP Express' privileges and rights on or to use of the Temporary Workspace Easements shall terminate. The Permanent Pipeline Easements and Temporary Workspace Easements are collectively referred to as the "Easements."

25. In no event is CP Express seeking to condemn any rights not authorized by the NGA to be condemned by CP Express following FERC's issuance of the Certificate.

26. The right to use the Easements shall belong to CP Express and its agents, employees, designees, contractors, guests, invitees, successors and assigns, and all those acting by or on behalf of it for the above stated purposes. CP Express seeks the right of ingress and egress over, across and through the Permanent Pipeline Easements and the Temporary Workspace Easements (while they remain in effect), and to access same from other rights-of-way or easements

and roads, to which CP Express has the right of access, for the above stated purposes and for all other purposes necessary and at all times convenient and necessary to exercise the rights granted by the Certificate as applied and enforced by this Court.

27.  No pipeline or Facilities of a permanent nature of any kind or character shall be constructed by CP Express on the Temporary Workspace Easements.

28.  Pursuant to the Easements sought herein, CP Express shall have the right to construct, maintain and change slopes of cuts and fills to ensure proper lateral and subjacent support and for drainage for the Facilities, and shall have the right to remove trees, brush, crops and other vegetation and obstructions from the Permanent Pipeline Easements and Temporary Workspace Easements (while they remain in effect), dewater the trench (either on or off the construction right-of-way) in accordance with applicable CP Express Pipeline Project permit conditions, which dewatering structures will be removed as soon as practicable after the completion of dewatering activities.

29.  Pursuant to the Easements sought herein, CP Express shall have the right to install, maintain and use gates in all fences which now cross or may cross the Permanent Pipeline Easements or which provide access to the Parent Tracts where the Easements intersect same; and CP Express shall have the right to install its own lock, if CP Express so chooses, and CP Express and the owners of the Parent Tracts shall have access (i.e., interlocking locks) through such gates. CP Express and its designated contractors, employees and invitees shall keep all gates in fences closed at all times, except when passing through same, so that cattle, horses and/or other livestock located on the Parent Tracts cannot stray from fenced pastures. CP Express shall have no right to fence or enclose the Permanent Pipeline Easements, but shall have the right to fence any applicable

surface site easements. CP Express shall, during the initial construction operations, maintain suitable crossings on, over, and across the Permanent Pipeline Easements.

30. If any of the lands within the Easements are subject to valid and, subsisting oil and gas leases, coal leases, surface leases, pipeline easements or easements for other purposes, CP Express's Easement rights acquired hereunder from and against the owners of such leases and or, easements, are (i) acquired only to extent necessary to carry out the rights granted to CP Express under the Easements sought, and (ii) to be exercised by CP Express so as to not unreasonably interfere with existing rights of such owners, provided, however, that CP Express shall be entitled in all events to use the Easements to carry out the purposes approved by FERC in the Certificate. CP Express has named such owners to the extent they claim some interest in the lands burdened by the Easements sought by CP Express. Defendants who own any interest in a valid and existing lease and/or an easement may use lands lying within the Permanent Pipeline Easements for the uses authorized under the applicable lease and/or easement, provided such uses do not destroy or unreasonably interfere with CP Express's permitted uses. As to all remaining Defendants, such Defendants (i) may use lands lying within the Permanent Pipeline Easements for all purposes which do not destroy or interfere with CP Express's permitted uses of same, including, without limitation, agricultural, open space, setback, density, street, utility and roadway purposes, (ii) after review and approval by CP Express, which will not be unreasonably withheld, may construct and install any and all streets and roadways and sidewalks, at any angle of as close to ninety degrees (90°) as reasonably possible to CP Express's Facilities, across the Permanent Pipeline Easements which do not interfere with, damage, destroy or alter the operation of the Facilities, (iii) may construct and/or install water, sewer, gas, electric, cable TV, telephone and/or other utility lines across the Permanent Pipeline Easements at any angle of  as close to ninety degrees (90°) as

reasonably possible to CP Express's Facilities, across the Permanent Pipeline Easements which do not interfere with, damage, destroy or alter the operation of the Facilities, and provided that all of CP Express's required and applicable spacings, including depth separation limits and other protective requirements are met.

31. The use of the lands within the Easements shall be regulated by all appropriate and then applicable ordinances, regulations, resolutions or laws of any governmental entity having authority over same. Defendants must notify CP Express in writing before the construction or installation of any streets, roadways, utilities or other encroachments on, over, across or under the Permanent Pipeline Easements.

32. Defendants may not use any part of the Permanent Pipeline Easements if such use may damage, destroy, injure, and/or interfere with the CP Express's use of same for the permitted uses hereunder. Defendants, except for those Defendants who have rights to do so under valid and subsisting leases and/or easements, are not permitted to conduct any of the following activities on the Permanent Pipeline Easements without the prior written permission from CP Express: (i) construct any temporary or permanent building or site improvements, other than streets and roads as provided above; (ii) drill or operate any well; (iii) remove soil or change the grade or slope; (iv) impound surface water; or (v) plant trees or landscaping. Notwithstanding anything herein to the contrary, no above or below ground obstruction that may destroy or materially interfere with CP Express's permitted uses shall be placed, erected, installed or permitted within or upon the Permanent Pipeline Easements without the prior written permission of CP Express. In the event the terms of this paragraph are violated, CP Express shall have the immediate right to correct or eliminate such violation at the sole expense of party who caused the violation.

33. CP Express has the right from time to time on the Permanent Pipeline Easements to trim, cut down or eliminate trees or shrubbery as may be necessary to prevent possible interference with the operation of the Facilities and to remove possible hazards thereto, and, except as provided above, the right to remove or prevent the construction of any and all buildings, structures, reservoirs or other obstructions on the Permanent Pipeline Easements that, in the sole judgment of CP Express, may endanger or interfere with the efficiency, safety, or convenient operation of the Facilities. From and after the completion of initial construction, CP Express shall pay any verifiable damages that may arise to growing crops, timber, fences and other improvements from the construction, maintenance and operation of the Facilities, provided that CP Express shall not be responsible for paying damages for its removal of any trees or brush (but not growing crops) or other obstructions from the Permanent Pipeline Easements or for its removal of any trees or brush as part of its routine operations to maintain thereof free from obstructions. CP Express shall maintain the Permanent Pipeline Easements and the Temporary Workspace Easements (while same remain in effect) clear of all litter and trash accumulations.

34. CP Express does not seek to acquire any royalty, working, revenue, overriding, or other oil, gas, or mineral interests. Defendants shall, to the extent owned by Defendants, retain all the oil, gas, and other minerals in, on and under the Parent Tracts, including within the Easements; provided, however, Defendants shall not be permitted to drill or operate equipment for the production or development of oil, gas, and minerals within or on the Permanent Pipeline Easements, but Defendants shall be permitted to extract the oil, gas and minerals from and under same by directional drilling and other means, so long as such activities do not damage, destroy, injure, and/or interfere with CP Express's use, operation and maintenance of the Facilities or CP Express's use of said easements for the purposes for which same are sought by CP Express.

35. Upon completion of construction, permanent fencing and tiling destroyed or disturbed by project construction activities shall be repaired and/or re-installed by CP Express, at its sole expense, along substantially the same alignment, configuration and approximate location of the Defendants' existing fences and tiling system.

36. CP Express shall comply in all respects, at its sole cost, with all applicable federal, state, and local laws, rules, and regulations which are applicable to CP Express' activities hereunder, including, without limitation, the construction, use, operation, maintenance, repair and service of the Facilities.

37. CP Express shall have the right to adequately mark the pipeline with permanent line markers, ground placards and install and maintain cathodic test leads in order to promote public safety and the future safe operation of said pipeline, and to meet applicable governmental regulations.

38. Notwithstanding anything to the contrary herein, CP Express (except for pipeline markers, and cathodic test leads on Permanent Pipeline Easements, which will be placed within the Permanent Pipeline Easements at road crossings, property boundaries or existing fence lines intersected by the pipeline, unless required by applicable regulations to be placed at other locations within the Permanent Pipeline Easements, and pipeline vents which will be placed within the Permanent Pipeline Easements at road crossings, where required, and true tracker wires), will not construct, build, install, maintain or have any above ground structures, installations, equipment or apparatus of any kind on or within the boundaries of the Permanent Pipeline Easements (except for power poles and lines and communication cables and facilities).

39. CP Express hereby agrees to indemnify and hold Defendants harmless from and against any claim or liability or loss from personal injury, property damage resulting from or

arising out of the use by CP Express, its contractors, servants, agents or invitees, of the Easements, excepting, however, any and all claims, liabilities or damages as may be due to or caused by the acts of a Defendant, or his, her or its servants, agents or invitees.

40.     CP Express shall have the right to assign its Easements to the extent allowed by applicable law, and the rights granted hereunder while in effect, may be assigned in whole or in part, to one or more assignees. The Permanent Pipeline Easements sought hereunder shall be in perpetuity, and the easement provisions of this Verified Complaint, including all benefits and burdens, shall be covenants running with the land and shall be binding on CP Express, Defendants, and their respective successors and assigns.

41.     It is in the public convenience and necessity, as evidenced by the Certificate, that the Easements, as certificated by FERC and described herein and in **Exhibit A,** be condemned for the public purposes herein described.

42.     The intended uses of the Easements to be taken are within the authority conferred by the Certificate.

43.     Pursuant to Fed. R. Civ. P. 65(c), CP Express will deposit into the Court's registry the amount required by the Court to secure Defendants compensation that will ultimately be awarded for the Easements sought, and subject to the withdrawal by Defendants on terms specified by this Court.

## COUNT TWO: DECLARATORY RELIEF

44.     CP Express incorporates by reference paragraphs 1 through 44.

45.     CP Express requests the Court to declare, pursuant to 28 U.S.C. § 2201, 15 U.S.C. 717f(h), and the Certificate issued by FERC, that CP Express has the substantive right to exercise

eminent domain over and condemn the Easements as outlined in this Verified Complaint and in the Certificate.

## COUNT THREE: INJUNCTIVE RELIEF

46. CP Express incorporates by reference paragraphs 1 through 46.

47. CP Express seeks an order granting it immediate entry upon the Easements identified herein.

48. Immediate access and entry is necessary so that CP Express can timely start construction of the CP Express Pipeline Project pending determination of just compensation, to meet the needs of CP Express's shipper and their customers. If CP Express does not obtain immediate access and entry to the Easements it will be unable to conduct the necessary surveys and other pre-construction activities, thereby delaying the placement of the CP Express Pipeline Project in service to meet the needs of its shipper and the public and will suffer immediate and irreparable harm for which it has no adequate remedy.

49. CP Express will, upon Court order, post an appropriate bond reflective of the total estimate of just compensation due to Defendants for the acquisition of the Easements. As a result, Defendants will not be harmed in any way.

50. CP Express has the right to condemn the Easements pursuant to the NGA and the Certificate FERC issued and, therefore, CP Express is substantially likely to prevail on the merits of the taking.

51. The Certificate establishes that the CP Express Pipeline Project and acquisition of the Easements is in the public interest.

52. Accordingly, CP Express requests the Court to enter an order granting injunctive relief to permit CP Express the right of immediate entry and access upon the Easements to commence and complete construction of the CP Express Pipeline Project.

## CIVIL RULE 71.1(D) NOTICES

53. Pursuant to Fed. R. Civ. P. 71.1(d)(1), CP Express is hereby delivering to the clerk the requisite notices to the Defendants named herein, as identified in **Exhibit A**.

WHEREFORE, CP Express respectfully prays that this Honorable Court:

a. Deem the Notice submitted herewith pursuant to Federal Rule of Civil Procedure 71.1(d) to be good and sufficient;

b. Order that said Notice be served on the Defendants in a manner set forth by Federal Rule of Civil Procedure 71.1(d)(3);

c. Recognize and declare CP Express's right to appropriate, through eminent domain, the Easements;

d. Enter an order granting CP Express immediate entry onto the Easements identified and described herein prior to the determination of just compensation upon the posting of security required by the Court to begin pre-construction activities and construction of the Facilities and operation and maintenance thereof while the issue of just compensation for the taking is resolved in this Court;

e. Appoint a commission for the determination of just compensation on the takings pursuant to Fed. R. Civ. P. 71.1(h)(2);

f. Enter judgment and order(s) of taking in favor of CP Express condemning the Easements identified and described herein; and

g. Issue all necessary and/or appropriate orders and decrees, and for all other general, equitable and legal relief as the Court deems just and proper.

Respectfully submitted on November 5, 2024.

                              **KEAN MILLER LLP**

                              */s/ John J. Smither*
                              John J. Smither\
                              Texas Bar No. 00789637
                              711 Louisiana Street, Ste. 1800 South Tower
                              Houston, Texas 77002
                              Telephone: (713) 844-3000
                              Facsimile: (713) 844-3030
                              John.Smither@keanmiller.com

Of Counsel:
Don Lighty
WELLS PEYTON PARTAIN BALDO & LIGHTY, LLP
Texas State Bar No. 12344600
550 Fannin Street, Suite 600
Beaumont, Texas 77701
Telephone: (409) 838-2644
Facsimile: (409) 838-0416
dlighty@wellspeyton.com

                              **ATTORNEYS FOR PLAINTIFF,**
                              **VENTURE GLOBAL CP EXPRESS, LLC**

## **VERIFICATION**

STATE OF VIRGINIA §
§
COUNTY OF ARLINGTON §

BEFORE ME , the undersigned authority, personally appeared FORY MUSSER, known to me to be the person whose name is subscribed to this instrument, and after being duly sworn stated upon his oath:

1.  My name is Fory Musser. I am the Senior Vice President – Development for Venture Global LNG, Inc. and its subsidiaries, including Venture Global CP Express, LLC ("CP Express"), on the CP Express Pipeline Project. I am the person responsible for supervising CP Express' efforts to acquire Easements and other interests needed for the CP Express Pipeline Project and overseeing construction of the CP Express Pipeline Project.

2.  I am duly authorized and qualified to make this verification on behalf of CP Express based on my personal knowledge of the factual matters set forth in the above Verified Complaint for Condemnation. I have read the foregoing Verified Complaint for Condemnation and am familiar with its contents. The statements of fact made in the Verified Complaint for Condemnation are within my personal knowledge and are true and accurate.

_____
Fory Musser
Senior Vice President – Development
Venture Global LNG, Inc.

SUBSCRIBED AND SWORN TO on the 30th day of October, 2024 by Fory Musser to which witness my hand and seal of office.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF VIRGINIA

_____
Printed Name of Notary
Michael E. Millan

My commission expires:

8-31-26

```
MICHAEL ELIEZER MILLAN
Notary Public
Commonwealth of Virginia
Registration No. 7979927
My Commission Expires Aug 31, 2026
```